UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANISE ALLEN and VALERION
FARR, II,

        Plaintiffs,

  v.

CITY OF DETROIT, a Michigan municipal corporation, JAMES YUILL, his individual and official capacity, SYDNEY BOGAN, in his individual and official capacity, and PATRICIA THORNHILL, in her individual and official capacity,

        Defendants.

Case No.
Hon.

_____/

JOEL B. SKLAR (P38338)
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
joel@joelbsklarlaw.com

PERKINS LAW GROUP, PLLC
TODD RUSSELL PERKINS (P55623)
STEPHEN J. CHACKO (P78210)
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
313-964-1702
tperkins@perkinslawgroup.com

_____/

**COMPLAINT AND JURY DEMAND**

Plaintiffs Danise Allen and Valerion Farr, II, file this Complaint and Jury Demand against Defendants City of Detroit, James Yuill, Sydney Bogan, and Patricia Thornhill and say:

1. Plaintiff Danise Allen ("Allen") is an individual who resides and/or transacts business in Wayne County, Michigan which is located in this Judicial District.

2. Plaintiff Valerion Farr, II ("Farr") is an individual who resides and/or transactions business in Wayne County, Michigan, which is located in this Judicial District.

3. Defendant City of Detroit is a Michigan municipal corporation which does business in Wayne County, Michigan which is located in this Judicial District.

4. Defendant James Yuill is an individual who resides and/or transacts business in Wayne County, Michigan which is located in this Judicial District. He is being sued in his individual and official capacity.

5. Defendant Sydney Brogan is an individual who resides and/or transacts business in Wayne County, Michigan which is located in this Judicial District. He is being sued in his individual and official capacity.

6. Defendant Patricia Thornhill is an individual who resides and/or transacts business in Wayne County, Michigan which is located in this Judicial District. She is being sued in her individual and official capacity.

7. All individual Defendants are being sued in their individual and official capacities.

8. During all relevant periods, the individual Defendants identified in this Complaint were acting under color of law.

9. None of the individual Defendants are entitled to qualified immunity for their constitutional torts as any reasonable state actor would know they were violating Plaintiffs' clearly established *First Amendment* rights.

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this controversy concerns a federal question.

11. The Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to this lawsuit occurred in this Judicial District and Defendants conduct business and employed Plaintiffs within this Judicial District.

## COMMON FACTUAL ALLEGATIONS

13. On August 21, 2003, Defendant City of Detroit hired Plaintiff Danise Allen, a female (Allen), as an Assistant Safety Officer in the City's Water and Sewer Department (DWSD).

14. On July 7, 2014, Plaintiff Allen was promoted to Environmental Health and Safety Coordinator ("Safety Coordinator") at DWSD.

15. A Safety Coordinator at DWSD conducts safety programs and investigates safety concerns to ensure compliance with applicable local, state, and federal rules and regulations. This position is also responsible for monitoring policy and procedures to ensure a healthy and safe work environment.

16. Sometime in 2020, Plaintiff Farr, a male, was transferred to the position of Safety Coordinator at DWSD, the same position as Allen.

17. Plaintiff Farr was paid more than Allen for substantially the same work.

18. Plaintiffs Allen and Farr were supervised by James Yuill and the City's Risk Management and Health Safety Manager.

19. Defendant Yuill, a male, was supervised by Defendant Sydney Bogan, the City's Chief of Safety and Security.

20. Patricia Thornhill, a female, was the Organizational Development Director at DWSD, *i.e.,* Human Resources (HR).

21. On January 6, 2021, the City of Detroit hired Christopher Dixon, a male, as a Safety Coordinator at DWSD.

22. Mr. Dixon told Plaintiff Allen about his salary, which was substantially more than hers, and other similarly situated female employees at DWSD.

4

23. Plaintiff Allen told Farr about Dixon's compensation and the unlawful pay disparity.

24. On January 13, 2021, Plaintiffs Allen and Farr met with Defendant Yuill to discuss the pay disparity and other issues.

25. Defendant Yuill informed Plaintiffs that at his old job, employees were terminated for sharing information about their salaries and cautioned Plaintiffs not to share theirs.

26. Plaintiff Farr informed Defendant Yuill that no such policy existed at DWSD and employees frequently shared salary information.

27. At the meeting's conclusion, Defendant Yuill promised to remedy the unlawful pay disparity.

28. On January 14, 2021, Plaintiffs Allen and Farr emailed Defendant Yuill concerning the meeting and provided a copy to HR representative Defendant Thornhill.

29. On the evening of January 14, 2021, Defendant Yuill called Farr and informed him that he was unhappy with his email.

30. On January 20, 2021, Defendant Yuill told Plaintiffs Allen and Farr that "I spoke with HR, and there will be NO pay increases or adjustments, this issue is over with, I am done talking about it, and it's time for everybody to get back to work."

5

31. On January 21, 2021, Plaintiff Farr sent an email to Defendants Bogan and Yuill concerning, among other things, the unlawful pay disparity among various male and female Safety Coordinators.

32. On January 22, 2021, Defendant Bogan acknowledged receipt and review of the email and stated he would schedule a meeting after HR concluded their investigation.

33. On January 25, 2021, Plaintiffs Allen and Farr met with HR Representative Yolanda Bradford to discuss their concerns.

34. On January 25, 2021, Plaintiff Farr, on behalf of himself and Allen, provided an "Employee Statement" to HR representative Bradford.

35. On January 26, 2021, Plaintiff Allen provided an "Employee Statement" to HR representative.

36. The "Employee Statements" contained, among other things, Plaintiffs' concerns over unequal pay for the same work among male and female Safety Coordinators and their sharing of information about wages.

37. On February 1, 2021, Plaintiff Allen and Farr met separately with Defendant Sydney Bogan, Defendant James Yuill and Yolanda Bradford to discuss the unlawful pay disparity.

38. At their respective meetings, Plaintiffs were told by Defendant Bogan and HR representative Bradford that they were prohibited from discussing their

salaries and/or those of other employees, should not have met with their supervisor (Yuill) jointly, and had no right to question their supervisor about unequal pay, or anything else, and what Defendant Yuill says goes.

39. Under Michigan Comp. Laws §408.483a an employer, like the City of Detroit, may not require as a condition of employment nondisclosure by an employee of his or her wage.

40. Under Michigan Comp. Laws §408.483a an employer, like the City of Detroit, may not discharge, formally discipline, or otherwise discriminate against for job advancement an employee who discloses his or her wages, like Plaintiffs disclosed theirs.

41. Despite this statutory prohibition, Plaintiffs Allen and Farr were disciplined and issued "Coaching" letters for their lawful disclosures.

42. On February 2, 2021, Plaintiff Farr was issued an "Individual Development Plan" (IDP).

43. On February 5, 2021, Plaintiff Allen also received an IDP.

44. On February 18, 2021, Plaintiffs met with Defendant Thornhill who informed them they were both terminated, purportedly for insubordination and/or for contacting HR with questions about the unlawful discipline.

45. The letters of discharge informed Plaintiffs they each had 10-days to appeal the decision.

46. The letters were deliberately sent out by Defendants *after* the appeal period had run.

## COUNT I

### EQUAL PAY ACT (EPA) VIOLATION
### (ALLEN)

47. Plaintiffs restate paragraphs 1 through 46 word for word.

48. Defendant City of Detroit is an "employer" covered under the Equal Pay Act (EPA), being 29 U.S.C. § 201, *et seq.*

49. Plaintiff Danise Allen is an "employee" covered under the EPA, as is Plaintiff Farr.

50. The EPA prohibits employers from paying an employee less than that paid to employees of the opposite sex for equal work.

51. Defendant City of Detroit violated the EPA when it paid Plaintiff Allen (and other similarly situated females) less than that paid to similarly situated male employees for the same work, including Dixon who was paid $80,000.00 despite being less qualified.

52. Defendant City of Detroit violated the EPA when it paid different wages to employees of opposite sexes for equal work on jobs the performance of which required equal skill, effort and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d)(1)

53. As a direct and proximate result of Defendants' unlawful acts, Plaintiff Allen suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, loss of opportunity and career advancement, emotional distress, anxiety, humiliation, anger, mortification, embarrassment, depression, emotional distress, loss of the pleasures of life and other injuries that will continue throughout and beyond this litigation.

## COUNT II

### RETALIATION IN VIOLATION OF EPA
### (ALLEN AND FARR)

54. Plaintiffs reassert paragraphs 1 through 53 above word for word.

55. Plaintiff Allen engaged in protected activity when she complained about the unlawful pay disparity between her and similarly situated male employees.

56. Plaintiff Farr engaged in protected activity when he identified the unlawful pay disparity and complained to Defendants about it.

57. Plaintiff Farr engaged in protected activity when he advocated for Allen and elicited a broken promise from Defendant Yuill that the City of Detroit would address and remedy the unlawful pay disparity.

58. Defendant City of Detroit, through Defendants Yuill, Bogan and Thornhill, knew of Plaintiffs Farr and Allen's protected activity.

59. Plaintiffs Allen and Farr suffered an adverse employment action *i.e.,* each was admonished, singled out for discipline, and discharged.

60. A causal connection exists between Plaintiffs Allen and Farr's protected activity and the adverse employment actions to which they were subjected.

61. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs Allen and Farr suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, loss of opportunity and career advancement, emotional distress, anxiety, humiliation, anger, mortification, embarrassment, depression, emotional distress, loss of the pleasures of life and other injuries that will continue throughout and beyond this litigation.

## COUNT III

### *FIRST AMENDMENT* VIOLATION
### (ALLEN AND FARR)

62. Plaintiffs reassert paragraphs 1 through 61 above word for word.

63. The *First Amendment* protects the right to free speech and association.

64. Plaintiffs' individual and collective reports of suspected civil rights violations, unlawful discrimination, violation of federal and state law, sharing of wages paid public employees from the public coif is of substantial public concern.

65. When Plaintiffs spoke out, they did so as citizens speaking on matters of public concern.

66. Defendants Yuill, Bogan and Thornhill knew of Plaintiffs' protected speech and association.

67. Defendants Yuill, Bogan and Thornhill retaliated against Plaintiffs Allen and Farr when they admonished, disciplined, and discharged them because of their protected activity.

68. Plaintiffs' interest in speaking out outweighed the government's interest in efficiency.

69. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs Allen and Farr suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, loss of opportunity and career advancement, emotional distress, anxiety, humiliation, anger, mortification, embarrassment, depression, emotional distress, loss of the pleasures of life and other injuries that will continue throughout and beyond this litigation.

## COUNT IV

### VIOLATION OF ELLIOTT LARSEN CIVIL RIGHTS ACT
### DISCRIMINATION BASED ON GENDER
### (ALLEN)

70. Plaintiffs reassert paragraphs 1 through 69 above word for word.

71. All Defendants are "employers" under Michigan's Elliott Larsen Civil Rights Act (ELCRA), being MCL § 37.2201, *et seq.*

72. Plaintiff Allen is an "employee" under the ELCRA and member of a protected class.

73. Plaintiff Allen was qualified for the Safety Coordinator job and performed her job in an exemplary manner.

74. Plaintiff Allen suffered an adverse employment action in that she was paid less than similarly situated male employees for the same work simply because she was a woman.

75. The unequivocal gender discrimination reflected in the pay disparity was deliberate and intentional.

76. As a direct and proximate result of Defendants' unlawful acts, Plaintiff Allen suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, loss of opportunity and career advancement, emotional distress, anxiety, humiliation, anger, mortification, embarrassment, depression, emotional distress, loss of the pleasures of life and other injuries that will continue throughout and beyond this litigation.

### COUNT V

**RETALIATION IN VIOLATION OF THE ELCRA
(ALLEN AND FARR)**

77. Plaintiffs reassert paragraphs 1 through 76 above word for word and paragraph for paragraph.

78. Plaintiff Farr is an "employee" under the ELCRA.

79. Plaintiff Allen engaged in protected activity under the ELCRA when she complained about the unlawful pay disparity between her and similarly situated male employees.

80. Plaintiff Farr engaged in protected activity when he objected to the pay disparity, supported, and advocated for Allen to be treated the same as similarly situated male employees.

81. All Defendants knew of Plaintiffs Allen and Farr's protected activity.

82. Plaintiffs Allen and Farr suffered an adverse employment action when they were admonished, disciplined, and discharged because of their protected activity.

83. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs Allen and Farr suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, loss of opportunity and career advancement, emotional distress, anxiety, humiliation, anger, mortification, embarrassment, depression, emotional distress, loss of the pleasures of life and other injuries that will continue throughout and beyond this litigation.

## COUNT VI

## VIOLATION OF MICHIGAN'S WHISTLEBLOWER PROTECT ACT (ALLEN AND FARR)

84. Plaintiffs reassert paragraphs 1 through 83 above word for word and

paragraph for paragraph.

85. All Defendants are "employers" and public bodies covered under Michigan's Whistleblower Protection Act (WPA) being, Mich. Comp. Laws §15.361 *et seq.*

86. Plaintiffs Allen and Farr are "employees" covered under the WPA.

87. Plaintiffs Allen and Farr engaged in protected activity under the WPA when they reported their suspicions of suspected unlawful activity to Defendants.

88. Plaintiffs suffered adverse employment actions as a result of their protected activity.

89. A causal connection exists between the Plaintiffs' respective protected activity and the adverse employment actions to which they were subject to.

90. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs Allen and Farr suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, loss of opportunity and career advancement, emotional distress, anxiety, humiliation, anger, mortification, embarrassment, depression, emotional distress, loss of the pleasures of life and other injuries that will continue throughout and beyond this litigation.

## RELIEF REQUESTED

**PLAINTIFFS REQUEST** that this Court enter a judgment against Defendants City of Detroit, James Yuill, Sydney Bogan, and Patricia Thornhill,

jointly and severally, as follows:

1. Legal relief:

    a. A judgment for lost wages and benefits, past and future, in whatever amount Plaintiffs are found to be entitled, should same apply;

    b. Compensatory damages in whatever amount they are found to be entitled;

    c. Punitive and exemplary damages, where appropriate, commensurate with the wrong and Defendants' ability to pay; and

    d. An award of interests, costs and reasonable attorney fees as provided by the 42 USC § 1988 and similar state and/or federal statutes referenced in this Complaint.

2. Equitable relief:

    a. Reinstatement;

    b. An injunction which prohibits Defendants from any further retaliation against Plaintiffs; and

    c. Whatever other equitable relief the Court deems to be appropriate.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiffs
Joel@joelbsklarlaw.com

|  |  |
|---|---|
|  | Todd Russell Perkins (P55623) |
|  | Stephen J. Chacko (P78210) |
|  | Perkins Law Group, PLLC |
|  | Attorneys for Plaintiffs |
|  | 615 Griswold, Suite 400 |
|  | Detroit, MI 48226 |
|  | 313-964-1702 |
| Dated:  May 6, 2021 | tperkins@perkinslawgroup.com |

## **DEMAND FOR JURY TRIAL**

Plaintiffs, DANISE ALLEN and VALERION FARR, II, by and through their attorneys, hereby demand a jury trial in the above captioned matter.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Todd Russell Perkins (P55623)
Stephen J. Chacko (P78210)
Perkins Law Group, PLLC
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
313-964-1702
Dated:  May 6, 2021          tperkins@perkinslawgroup.com